2020 IL App (1st) 191171-U

THIRD DIVISION
June 24, 2020

No. 1-19-1171

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| HARTE BRICK, | ) | Appeal from |
| | ) | the Circuit Court |
| Petitioner-Appellant, | ) | of Cook County |
| | ) | |
| v. | ) | 2018-L-012589 |
| | ) | |
| TICKETMASTER, LLC, a Virginia Corporation, | ) | Honorable |
| | ) | Patricia O'Brien Sheahan, |
| Respondent-Appellee. | ) | Judge Presiding |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Ellis and Justice Cobbs concurred in the judgment.

O R D E R

¶ 1    *Held*: Trial court did not err by dismissing petition for pre-suit discovery where petitioner pled that the respondent-in-discovery was potentially liable for the alleged injury.

¶ 2    Harte Brick, who purchased concert tickets for more than their face value from a ticket reseller using Ticketmaster's website, petitioned pursuant to Illinois Supreme Court Rule 224 (eff. May 30, 2008) for pre-suit discovery of all members of Ticketmaster's Resale Partner Program who were also using Ticketmaster's web-based inventory management and point-of-sale system, TradeDesk, to buy and resell event tickets. Brick alleged Ticketmaster was secretly facilitating the mass purchase and overpriced resale of tickets by these professional ticket scalpers, in order to

increase the number of transactions and thus increase Ticketmaster's earnings. The trial court granted Ticketmaster's motion to dismiss Brick's petition as an impermissible use of Illinois' pre-suit discovery rule, given that she was already aware of a potential defendant, namely Ticketmaster. *See* 735 ILCS 5/2-619(a)(9) (West 2018)). On appeal, Brick contends the dismissal was contrary to the purpose of Rule 224 because she sought the resellers' identities in order to bring class action claims of consumer fraud and unjust enrichment, but if she first sues only Ticketmaster, her action will be dismissed due to a class action waiver and mandatory arbitration language in Ticketmaster's ticket sales contract. Ticketmaster responds that the dismissal should be affirmed because pre-suit discovery is available only when the petitioner does not know the identity of any party potentially liable for the alleged injury, and that it is irrelevant that Brick wants to sue others or that Ticketmaster might compel arbitration.

¶ 3     We have jurisdiction over Brick's appeal pursuant to Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017) from a final judgment of the circuit court.

¶ 4     Supreme Court Rule 224 provides potential plaintiffs with a means to compel discovery in order to identify persons or entities "who may be responsible in damages" (eff. May 30, 2008). A Rule 224 petition creates an independent action for discovery and is not a complaint at law as it does not allege actionable conduct or seek damages. *Gonzales v. Pro Ambulance Service*, 219 Ill. App. 3d 284, 287, 579 N.E.2d 1184, 1186 (1991). The petition must be brought in the name of the petitioner and name as respondents the persons or entities from whom discovery is sought, state a reason why the discovery is necessary and the nature of the discovery sought, and ask for an order authorizing the petitioner to obtain the discovery. *Guava LLC v. Comcast Cable Communications, LLC*, 2014 IL App (5th) 130091, ¶ 61, 10 N.E.3d 974; Ill. S. Ct. R. 224(a)(1)(ii) (eff. May 30,

1-19-1171

2008).

¶ 5    In her petition for discovery from Ticketmaster, Brick alleged that Ticketmaster is " 'the world's largest ticket supplier' " and " 'has a near monopoly on major event seating in North America.' " Brick alleged she bought tickets through Ticketmaster's website from a third-party reseller for a summer 2018 concert at Chicago's Soldier Field. She did not specify the price, but alleged she "paid more than face value" for the tickets. She cited newspaper articles indicating that undercover reporters posing as professional ticket resellers in the summer of 2018 had been "welcomed" to a Ticketmaster marketing event and been assured that Ticketmaster " 'turns a blind eye to scalpers who use ticket-buying bots and fake identities to snatch up tickets and then resell them on the site for inflated prices.' " Brick alleged that she and others had been damaged by ticket resellers and Ticketmaster because Ticketmaster "permitted and actively encouraged" scalpers to purchase large numbers of tickets and resell them at inflated prices. She alleged that Ticketmaster "supported" and "facilitated the sale of tickets to the secondary market" through a combination of its Resale Partner Program and the use of TradeDesk, Ticketmaster does not publicize TradeDesk's existence, TradeDesk is a secret inventory-management and point-of-sale system that was " 'built expressly for ticket resellers,' " and TradeDesk enables " 'scalpers to seamlessly sync their Ticketmaster accounts (where they buy their tickets) with their online resale [of the verified tickets]." Consequently, " 'TradeDesk users [are] moving up to several million tickets per year.' " Brick sought discovery of the names and addresses of all members of Ticketmaster's Resale Partner Program that were using TradeDesk, so that she could name them in "a class action lawsuit, sounding in unfair and deceptive acts or practices and for unjust enrichment."

¶ 6    Ticketmaster filed a motion to dismiss in which it argued that Brick could not use Rule 224

to conduct pre-suit discovery from Ticketmaster when she was already aware that Ticketmaster was a potential defendant. Ticketmaster related that the parties' attorneys had met to discuss the action, Ticketmaster's attorney asked whether Brick was considering suing Ticketmaster for the conduct described in her pre-suit petition, and Brick's attorney would not rule out this possibility and declined to stipulate that Ticketmaster was not a potential defendant. Ticketmaster argued Brick's petition should be dismissed because caselaw indicates "a Rule 224 petition is not an appropriate vehicle to discover the identities of *additional* responsible parties or *additional* facts bolstering a claim of liability."

¶ 7    After briefing and oral arguments, the trial court acknowledged that there could be many other potential defendants but that Brick indisputably already knew of Ticketmaster's connection to her alleged injury. The court ruled that Brick's action must be dismissed because "Ticketmaster's presence precludes a Rule 224 Petition."

¶ 8    On appeal from that ruling, the parties disagree on the applicable standard of review, because they disagree on what occurred in the trial court. They agree that generally the denial of a Rule 224 petition is reviewed for an abuse of discretion, but that when the trial court's exercise of discretion relies on a conclusion of law, then the ruling is reviewed *de novo*. *Maxon v. Ottawa Publishing Co.*, 402 Ill. App. 3d 704, 709, 929 N.E.2d 666, 672 (2010). Brick contends the *de novo* standard governs because the court denied (rather than dismissed) her petition, without considering whether Brick's purpose for the petition had been achieved, by ruling as a matter of law that her knowledge of at least one potential defendant meant she was not entitled to pre-suit discovery. According to Ticketmaster, we should employ the abuse of discretion standard of review because the trial court granted Ticketmaster's motion to dismiss Brick's petition, after determining that

regardless of Brick's desire to sue other entities, the purpose of a Rule 224 petition had already been achieved. Ticketmaster contends *Low Cost Movers v. Craigslist, Inc.*, 2015 IL App (1st) 143955, 45 N.E.3d 357, is on point and indicates that the abuse of discretion standard governs our review of the dismissal.

¶ 9    Given that the trial court ruled on Ticketmaster's motion to dismiss Brick's petition, which argued that Brick's petition was facially defective, instead of granting or denying Brick's petition on its merits, we find that the *de novo* standard which governs review of section 2-615 proceedings is controlling. A motion to dismiss a complaint or petition pursuant to section 2-615 of the Code of Civil Procedure attacks the legal sufficiency of the allegations. *Hampton v. Chicago Transit Authority*, 2018 IL App (1st) 172074, ¶ 19, 138 N.E.3d 751. In contrast, a motion to dismiss pursuant to section 2-619 admits the legal sufficiency of the allegations, but raises an affirmative defense or another basis to defeat the claims alleged. *Hampton*, 2018 IL App (1st) 172074, ¶ 19, 138 N.E.3d 751; 735 ILCS 5/2-619(a)(9) (West 2018). Although Ticketmaster cited section 2-619 in its motion to dismiss, Ticketmaster's motion did not inform the trial court of an affirmative matter outside the petition, as section 2-619 motions do, such as a bankruptcy, or a doctrine such as *res judicata* or governmental immunity, which would preclude proceeding on an otherwise viable pleading. *See* 735 ILCS 5/2-619(a)(6) (West 2018) ("the claim set forth in the plaintiff's pleading has been released, satisfied of record, or discharged in bankruptcy"; 735 ILCS 5/2-619(a)(4) (West 2018) ("the cause of action is barred by a prior judgment"); *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475, 763 N.E.2d 756 (2002) (indicating governmental immunity is an affirmative matter that is properly raised in a section 2-619(a)(9) motion to dismiss, as that section permits involuntary dismissal where the claim asserted against

defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim).

¶ 10    We do not consider *Low Cost Movers* to be procedurally on point as Ticketmaster argues, because Ticketmaster's motion to dismiss called the court's attention to the insufficiency of Brick's allegations, while in *Low Cost Movers*, a trial judge *sua sponte* dismissed a Rule 224 petition at the conclusion of a status call, because the respondent-in-discovery had satisfied the petition.

¶ 11    According to the opinion, a moving company believed that its competitors had been flagging its ads for removal from the Craigslist website and petitioned for disclosure of the identity of anyone who had flagged the ads since 2011, so that it could sue them. *Low Cost Movers*, 2015 IL App (1st) 143955, ¶ 1, 45 N.E.3d 357. Craigslist met with the moving company to discuss what had occurred and at a subsequent status call also informed the court that in 2014, Craigslist, on its own initiative, had removed the ads as violative of Craigslist's terms of use. *Low Cost Movers*, 2015 IL App (1st) 143955, ¶¶ 1, 5, 45 N.E.3d 357. The trial court continued the case so that the parties could continue their discussion. *Low Cost Movers*, 2015 IL App (1st) 143955, ¶ 5, 45 N.E.3d 357. At the next status call, Craigslist informed the court that it had agreed to search its records for improper flagging prior to 2014, but that the moving company had failed to respond to Craigslist's request to narrow the date range so that Craigslist could determine the cost and feasibility of a less extensive search. *Low Cost Movers*, 2015 IL App (1st) 143955, ¶ 6, 45 N.E.3d 357. The moving company's attorney acknowledged that he had not provided the additional search dates. *Low Cost Movers*, 2015 IL App (1st) 143955, ¶ 6, 45 N.E.3d 357. Craigslist contended that it had complied with its obligations under Rule 224. *Low Cost Movers*, 2015 IL App (1st) 143955, ¶ 6, 45 N.E.3d 357. At the end of that second status call, the trial court *sua sponte* dismissed the

moving company's Rule 224 petition and later denied a motion to vacate the dismissal, finding that Craigslist had provided sufficient information to satisfy the petition and that the moving company had not shown grounds for reconsideration. *Low Cost Movers*, 2015 IL App (1st) 143955, ¶¶ 5-6, 45 N.E.3d 357. Thus, the opinion indicates the court ruled without prompting from either party, in light of the respondent's voluntary disclosure of information which was responsive to the petition and because it seemed the petitioner was pursuing a "wide-ranging, vague and speculative quest to determine whether a cause of action actually exists." *Low Cost Movers*, 2015 IL App (1st) 143955, ¶ 17, 45 N.E.2d 357. The appellate court concluded, "Based on the information before the trial court, namely, that Craigslist had removed Low Cost's ads in 2014 and Low Cost had not provided additional search dates, the trial court acted well within its discretion in dismissing Low Cost's Rule 224 petition." *Low Cost Movers*, 2015 IL App (1st) 143955, ¶ 18, 45 N.E.3d 357.

¶ 12 *Low Cost Movers*' *sua sponte* ruling contrasts with what occurred between Brick and Ticketmaster. The trial court did not determine on its own initiative that Ticketmaster provided sufficient information to Brick to satisfy her petition and that Brick was not entitled to delve any further into discovery. Instead, the trial court was persuaded by Ticketmaster's motion to dismiss in which it argued "Here, *Petitioner* [(emphasis added)] has already identified a party that may be responsible—Ticketmaster" and that a pleading that seeks to nevertheless identify "*every* potential defendant" is "not an appropriate use of Rule 224."

¶ 13 For these reasons, we disagree with Brick's contention that the court denied her petition and we disagree with Ticketmaster's contention that the court dismissed Brick's petition due to Ticketmaster's presentation of an affirmative matter outside an otherwise sufficient pleading. The court ruled that Brick's action must be dismissed because "Ticketmaster's presence [as the

respondent] precludes a Rule 224 Petition." Ticketmaster presented and the trial court ruled on a section 2-615 motion to dismiss.

¶ 14 A section 2-615 motion to dismiss "challenges the legal sufficiency of the complaint based on defects apparent on its face." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429, 856 N.E.2d 1048, 1053 (2006). A section 2-615 motion to dismiss "presents the question of whether the facts alleged in the complaint, viewed in the light most favorable to the plaintiff, and taking all well-pleaded facts and all reasonable inferences that may be drawn from those facts as true, are sufficient to state a cause of action upon which relief may be granted." *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 25, 988 N.E.2d 984 (citing *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 16, 973 N.E.2d 880). A court should dismiss a claim pursuant to section 2-615 when it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Marshall*, 222 Ill. 2d at 429, 856 N.E.2d at 1053. We review the court's ruling on a section 2-615 motion to dismiss *de novo*. *Doe-3*, 2012 IL 112479, ¶ 15, 973 N.E.2d 880.

¶ 15 Rule 224(a)(1)(i) states: "A person or entity who wishes to engage in discovery for the sole purpose of ascertaining the identity of one who may be responsible in damages may file an independent action for such discovery." (eff. May 30, 2008). Since the rule's first enactment in 1989, courts have consistently held that a Rule 224 proceeding is limited to "ascertaining the identity of one who may be responsible in damages" (eff. Aug. 1, 1989) and that " '[o]nce the identity of such a person or identity has been ascertained, the purpose of Rule 224 has been achieved and the action should be dismissed.' " *Low Cost Movers*, 2015 IL App (1st) 143955, 43 N.E.3d 357 (quoting *Gaynor v. Burlington Northern & Santa Fe Ry.*, 322 Ill. App. 3d 288, 292

750 N.E.2d 307, 310 (2001)).

¶ 16    In *Guertin*, for instance, shortly after Rule 224 was adopted, the petitioners speculated that their sister-in-law exerted undue influence in the division of an estate that all of the parties benefitted from and they sought to depose her and bank personnel before filing a complaint. *Guertin v. Guertin*, 204 Ill. App. 3d 527, 528, 561 N.E.2d 1339, 1340 (1990). She moved to dismiss on grounds that the petition merely sought discovery to determine whether a cause of action existed against a known defendant. *Guertin*, 204 Ill. App. 3d at 528, 561 N.E.2d at 1340. The trial court denied her motion. *Guertin*, 204 Ill. App. 3d at 528, 561 N.E.2d at 1340. She later refused to appear for a deposition and was held in civil contempt. *Guertin*, 204 Ill. App. 3d at 529, 561 N.E.2d at 1340. The appellate court reversed the trial court and vacated the contempt order, finding that the trial court had no authority under common law, the Code of Civil Procedure, or the Supreme Court Rules, including Rule 224, to order the deposition. *Guertin*, 204 Ill. App. 3d at 531-32, 561 N.E.2d at 1342. Thus, the petitioners were unable to engage in discovery where they already knew "the identity of one who may be responsible in damages." Ill. S. Ct. R. 224 (eff. May 30, 2008).

¶ 17    Next, in *Shutes*, the court upheld the law as constitutional and, in response to an argument that the rule was unconstitutionally vague, stated that discovery under Rule 224 "is limited to discovering the identities of potential defendants." *Shutes v. Fowler*, 223 Ill. App. 3d 342, 345, 584 N.E.2d 920, 923 (1991).

¶ 18    In *Roth*, a 1993 opinion, the Rule 224 petition made it apparent that the authoring attorney already knew the identity of many of those who might be named in a medical malpractice action. *Roth v. St. Elizabeth's Hospital*, 241 Ill. App. 3d 407, 418-19, 607 N.E.2d 1356, 1364 (1993). The appellate court reiterated that Rule 224 is limited to learning the identity of those who may be

responsible and that the facts did not warrant application of the rule. *Roth*, 241 Ill. App. 3d at 419, 607 N.E.2d at 1364.

¶ 19    *Malmberg* was another 1993 opinion in which the Rule 224 petitioner already knew "the identity of one who may be responsible in damages." *Malmberg v. Smith*, 241 Ill. App. 3d 428, 430, 607 N.E.2d 1370, 1371 (1993); Ill. S. Ct. R. 224 (eff May 30, 2008)). The petitioner alleged he had been suspended from work for 30 days because someone made a false statement to his employer and he sought the production of records that would show who made the statement and what had been said, even though he already knew which co-worker made a statement about illegal drug use. *Malmberg*, 241 Ill. App. 3d at 430, 607 N.E.2d at 1371. The court ordered the discovery but the employer refused to produce the records. *Malmberg*, 241 Ill. App. 3d at 430, 607 N.E.2d at 1371-72. On appeal, the court, in reliance on *Roth*, *Shutes*, *Guertin*, reversed the trial court and dismissed the petition, finding Rule 224 inapplicable since the record revealed that the identity of the potential defendant was already known. *Malmberg*, 241 Ill. App. 3d at 432, 607 N.E.2d at 1373.

¶ 20    Brick points to a single case, *Beale*, to support her argument that Rule 224 allows discovery despite her knowledge of a potential defendant. *Beale v. EdgeMark Financial Corp.*, 279 Ill. App. 3d 242, 250, 664 N.E.2d 302, 307 (1996). The court's reasoning, however, is not applicable to Brick's petition and it has been distinguished since its filing in 1996. The Rule 224 petitioner in *Beale* believed he had been harmed by insider trading of EdgeMark stock immediately preceding the public announcement of EdgeMark's acquisition by Old Kent and he sought the production of information that EdgeMark divulged to the National Association of Securities Dealers (NASD) in response to the agency's inquiry into the transaction. *Beale*, 279 Ill. App. 3d at 253, 664 N.E.2d at

308-09. NASD had sent a list to EdgeMark of the names and addresses of 36 individuals or married couples and asked EdgeMark to identify whether those persons had any type of affiliation with the company or its officers which could make them aware of nonpublic information prior to Old Kent's acquisition. *Beale*, 279 Ill. App. 3d at 247, 664 N.E.2d at 305. The petitioner attached the NASD letter to his petition. *Beale*, 279 Ill. App. 3d at 247, 664 N.E.2d at 305. The trial court granted discovery of Edgemark's response to the NASD inquiry, denied EdgeMark's request to limit the discovery to only the names, but stayed execution of the order pending appeal. *Beale*, 279 Ill. App. 3d at 247-48, 664 N.E.2d at 305.

¶ 21    Thus, the narrow issue on appeal was whether Rule 224 could be used to cull a general list of 36 stock buyers by discovering which of them had relationships or affiliations with Edgemark's officers, directors, or representatives. *Beale*, 279 Ill. App. 3d at 253, 664 N.E.2d at 309. The appellate court reasoned that "[e]mphasis should not be placed on the word 'identity' alone but, rather, on the entire phrase 'identity of one who may be responsible,' " and that "[i]n order to determine 'who may be responsible,' one must be able to identify those individuals or entities who stand in the universe of potential defendants." *Beale*, 279 Ill. App. 3d at 252, 664 N.E.2d at 308. Without the requested discovery, the "known connection to the injury [was] remote and [did not] *** limit or define the universe of potential defendants." *Beale*, 279 Ill. App. 3d at 252-53, 664 N.E.2d at 308. The appellate court concluded that "a reasonable interpretation of Rule 224 would permit the trial judge some latitude of discretion under its provisions to allow discovery of certain additional facts pertaining to the relationship between the stock purchasers and the corporate insiders to further define and narrow the universe of potential defendants." *Beale*, 279 Ill. App. 3d at 253, 664 N.E.2d at 309. Even so, the court cautioned that "[o]nly the name of the individual or

entity bearing such connection may be ascertained." *Beale*, 279 Ill. App. 3d at 252, 664 N.E.2d at 308. Rule 224 discovery should not "delve into any actual details of wrongdoing" and should not be used to "establish actual liability or responsibility rather than potential for liability." *Beale*, 279 Ill. App. 3d at 253, 664 N.E.2d at 308.

¶ 22    *Beale* does not support Brick's broad statement that a petitioner may proceed with Rule 224 discovery despite knowing the identity of a potential defendant. Instead, *Beale* may be cited for the narrow proposition that "on occasion, the identification of a [potential] defendant may require more than simply a name." *Gaynor*, 322 Ill. App. 3d at 294, 750 N.E.2d at 312.

¶ 23    In *Gaynor*, an employer hired an investigative agency to determine if the unusual number of employees who called in sick were attending a golf tournament. *Gaynor*, 322 Ill. App. 3d at 289, 750 N.E.2d at 308. The investigative agency recorded several hours of videotape (without the employees' consent) and then gave the recording to the employer. *Gaynor*, 322 Ill. App. 3d at 290, 750 N.E.2d at 308. One of the employees petitioned pursuant to Rule 224 to compel the employer and the investigative agency to turn over the videotape and other information, including the names and addresses of the individuals who conducted the videotaping, which the employee contended he needed to obtain to determine who might be liable to him in a right to publicity claim. *Gaynor*, 322 Ill. App. 3d at 290, 750 N.E.2d at 309. *See* 765 ILCS 1075/10 (West 2000) ("The right to control and to choose whether and how to use an individual's identity for commercial purposes is recognized as each individual's right of publicity."). Despite these allegations, on that same day, the employee also filed a right to publicity claim against the investigative agency concerning the same videotaping. *Gaynor*, 322 Ill. App. 3d at 290, 750 N.E.2d at 309. The trial court ordered the employer to turn over the material requested in the Rule 224 petition, and an appeal followed.

*Gaynor*, 322 Ill. App. 3d at 290, 750 N.E.2d at 309.

¶ 24    The court reviewed *Guertin*, *Shutes*, *Roth*, and *Malmberg*, and concluded that multiple decisions have held that Rule 224 is inapplicable when the identity of a potential defendant is already known. *Gaynor*, 322 Ill. App. 3d at 292, 750 N.E.2d at 307.

¶ 25    Citing *Beale*, the employee argued that even though a Rule 224 petitioner knows the name of one or more potential defendant–as the petitioning employee knew the name of the investigative agency and Brick knows the name of Ticketmaster– that knowledge did not preclude Rule 224 discovery. *Gaynor*, 322 Ill. App. 3d at 294, 750 N.E.2d at 312. The court noted that Rule 224's "use is appropriate in situations where a plaintiff has suffered injury but does not know the identity of one from whom recovery may be sought" and that in those situations, "there is a genuine need *** to identify potential defendants so that a plaintiff is not without redress for the injury suffered." *Gaynor*, 322 Ill. App. 3d at 294, 750 N.E.2d at 312. *Beale*'s significance was that "on occasion, the identification of a defendant may require more than simply a name and *** on those occasions, discovery under Rule 224 is not limited to *** a name only." *Gaynor*, 322 Ill. App. 3d at 294, 750 N.E.2d at 312. "However, even under *Beale*, knowledge of the connection of an individual to the injury involved will preclude further discovery under the rule." *Gaynor*, 322 Ill. App. 3d at 295, 750 N.E.2d at 312. Applying this settled proposition of law, the court found that Rule 224 discovery had been unwarranted. The record indicated that the employee had knowledge of the connection of his alleged right to publicity claim to the potential defendants (his employer and the investigative agency), and that the connection between the injury and the potential defendants already known was not remote. *Gaynor*, 322 Ill. App. 3d at 295, 750 N.E.2d at 312. "Therefore, petitioner [was not like the petitioner in *Beale* and] has no need for additional connecting facts to

further refine the universe of defendants having potential liability." *Gaynor*, 322 Ill. App. 3d at 295, 750 N.E.2d at 312. The employee's pursuit of the videotape and other material was a search for actual liability and greatly exceeded the scope of Rule 224. *Gaynor*, 322 Ill. App. 3d at 296, 750 N.E.2d at 314.

¶ 26    Thus, *Gaynor* refutes Brick's contention that she may engage in Rule 224 discovery despite knowing the identity of an individual or entity who may be responsible in damages for the injury she alleged suffered when she purchased summer concert tickets that were overpriced due to Ticketmaster and a ticket scalper's circumvention of Ticketmaster's stated policies.

¶ 27    Brick argues that the trial court got it wrong because the purpose of Rule 224 has not been fulfilled when Brick wants to file a lawsuit "against those who have circumvented Ticketmaster's posted event ticket purchasing limits, but *** does not know their identities." Brick's argument is betrayed by the Issues Presented section of her appellate brief, where she states she "knows the identity of only one potential defendant" and Ticketmaster is "the known potential defendant." Brick's argument is also betrayed by the allegations in her Rule 224 petition, such as her allegations that Ticketmaster "welcomed" potential ticket scalpers to a marketing event in the summer of 2018; Ticketmaster " 'turns a blind eye to scalpers who use ticket-buying bots and fake identities to snatch up tickets and then resell them on the site for inflated prices;' " Ticketmaster "permitted and actively encouraged" scalpers to buy and resell large numbers of tickets in violation of Ticketmaster's stated policies; and Ticketmaster "supported" and "facilitated the sale of tickets to the secondary market."

¶ 28    Brick also argues that even though she is aware of a potential defendant, the purpose of Rule 224 has not been satisfied because Ticketmaster would compel her to arbitration instead of

litigation and because Brick wants to sue other defendants. Brick contends that arbitration with Ticketmaster would be subject to JAMS Arbitration's Streamlined Arbitration Rules and Procedures, and that Rule 13, which governs the "Exchange of Information" provides for the good faith, cooperative exchange of relevant documents and information and that the "necessity of additional information exchange shall be determined by the Arbitrator based upon the reasonable need for the requested information, the availability of other discovery options and the burdensomeness of the request." *Rule 13, Exchange of Information*, https://www.jamsadr.com/rules-streamlined-arbitration/#Rule13 (last visited May 1, 2020).

¶ 29    Brick contends the trial court's dismissal ignores the fact that if Brick filed a lawsuit against Ticketmaster, then she would be forced into individual, non-class arbitration where she would not be able to ascertain the identities of any potentially responsible parties through either the respondents-in-discovery statute or the general discovery provisions of the Supreme Court Rules. Stated in other words, Brick would not be able to discover the identity of all the members of Ticketmaster's Resale Partners Program who also use TradeDesk and "whose conduct affected [Brick] and other Class members." Brick contends that the cases we have discussed are distinguishable because those petitioners had the ability to conduct discovery in a separate action, and Brick cannot conduct discovery in a separate action.

¶ 30    Illinois law indicates, however, that the scope of Rule 224 discovery does not broaden based on the petitioner's litigation strategy. Brick's argument was presented and rejected in *Low Cost Movers*, 2015 IL App (1st) 143955, 45 N.E.3d 357. As we discussed above, in *Low Cost Movers*, the petitioning moving company sought to discover the identity of anyone who had flagged its ads for removal from Craigslist's website, and respondent Craigslist identified itself.

*Low Cost Movers*, 2015 IL App (1st) 143955, ¶ 5, 45 N.E.3d 357. The moving company acknowledged the line of appellate cases that includes *Guertin*, *Malmberg*, and *Roth*, which indicates that a Rule 224 petition may be dismissed if one potential defendant is identified. *Guertin*, 204 Ill. App. 3d 527, 561 N.E.2d 1339; *Malmberg*, 241 Ill. App. 3d 428, 607 N.E.2d 1370; and *Roth*, 241 Ill. App. 3d 407, 607 N.E.2d 1356. The moving company argued the cases were distinguishable because Craigslist could not be a potential defendant to claims of tortious interference with economic advantage and consumer fraud. *Low Cost Movers*, 2015 IL App (1st) 143955, ¶ 5, 45 N.E.3d 357. The moving company argued it should be permitted to engage in discovery to determine whether there was a person or entity who could be sued under those two theories. *Low Cost Movers*, 2015 IL App (1st) 143955, ¶ 5, 45 N.E.3d 357.

¶ 31    The appellate court "reject[ed] the notion that discovery may continue until the identity of the party that engaged in the 'wrongdoing' coincides with the petitioner's causes of action." *Low Cost Movers*, 2015 IL App (1st) 143955, ¶ 17, 45 N.E.3d 357. The purpose of the rule–to ascertain one who *may* be responsible in damages–had been served despite the moving company having no basis to sue Craigslist under its preferred causes of action. *Low Cost Movers*, 2015 IL App (1st) 143955, ¶ 17, 45 N.E.3d 357 (*quoting* Ill. S. Ct. R. 224(a)(1) (eff. May 30, 2008) (emphasis supplied). The court revisited *Beale*'s discussion of the fact that the extent of inquiry is to be established on a case-by-case basis, and that a petition seeking to establish actual liability, rather than potential liability, is not a proper use of the rule. *Low Cost Movers*, 2015 IL App (1st) 143955, ¶ 17, 45 N.E.3d 357. "Rule 224 is not intended to permit a party to engage in a wide-ranging, vague, and speculative quest to determine whether a cause of action actually exists." *Low Cost Movers*, 2015 IL App (1st) 143955, ¶ 17, 45 N.E.3d 357. See also *Shutes*, 223 Ill. App.3d at 346,

584 N.E.2d 920 (trial judges have the ability to recognize and refuse to allow " 'fishing expeditions' and other abuses" of Rule 224).

¶ 32    Accordingly, Brick was not entitled to pursue Rule 224 discovery in order to support her preference for litigation instead of arbitration or her preference to sue additional defendants besides Ticketmaster. We find that it was not error for the trial court to find that "Ticketmaster's presence [as one who may be responsible in damages] precludes a Rule 224 Petition." We affirm the trial court's dismissal of Brick's petition for pre-suit discovery from Ticketmaster.

¶ 33    Affirmed.